EASTERLY v. MYERS, No. 2.—148 S. W. (2d) 640.

Eastern Section. October 26, 1940.

Petition for Certiorari denied by Supreme Court, March 1, 1941.

Kilgo & Armstrong, of Greeneville, for appellant.
Susong, Parvin & Fraker, of Greeneville, for appellee.

McAMIS, J. Complainant J. E. Easterly sues L. H. Myers to recover one-half of $14,000 alleged to have been lost over a period of more than a year in trading upon the Chicago grain market. The theory of the bill is that a partnership existed between complainant and defendant and that the funds lost belonged to complainant so that defendant is indebted to complainant for one-half of the amount lost.

The Chancellor found that no partnership existed between the parties, and in any event, that the transactions out of which the alleged loss occurred involved speculating upon the rise and fall of the market and, for that reason, under the facts to be stated, constituted gambling transactions.

We consider first the finding of the Chancellor challenged by the second assignment of error, that the transactions involved constituted gaming contracts and, hence, were illegal and nonenforceable. Some statement of the facts is required.

Prior to August 1930, complainant was a prosperous farmer and trader in livestock. Defendant was a speculator in stocks and commodities such as wheat and other grains. Defendant's experience on the Chicago Market was known to complainant and complainant was advised of large dealings conducted by defendant which, at times, had been highly successful and profitable but, at the time in question, defendant owed over $100,000 and was wholly unable to meet his obligations. It seems from all the circumstances that complainant could not have escaped knowledge of defendant's financial condition and defendant testified that he advised com-

plainant before entering into the arrangement to trade on the market that he had no money to lose.

Complainant testified that in August 1930 he and the defendant entered into an arrangement which he described as a partnership to buy and sell grains and commodities on the market through a brokerage firm known as Fisher and Company located at Knoxville, Tennessee. Complainant says he was to furnish all of the money for these operations and the defendant was to contribute his time and experience in looking after the account at Fisher and Company; that defendant was to have half the profits and share equally with him in any losses incurred. He says he furnished over $14,000 for carrying on the project while defendant paid nothing except half of a $1,000 note which both parties executed to a bank for borrowed money used in the enterprise.

Defendant, on the other hand, testified that he was not to become responsible for any losses incurred as he had nothing to put into the enterprise and could lose nothing in it and that complainant made no effort to collect any part of the losses until several years after the account was closed but did attempt to collect or have the bank collect the note which both parties had signed. Defendant says that, in order to meet complainant's demands in this connection, he gave complainant a bill of sale upon $1,200 worth of tobacco, and later sold the tobacco, paid his half of the $1,000 note and kept the remainder. Complainant thereafter instituted criminal proceedings charging defendant with unlawfully disposing of the tobacco but this proceeding was dropped and never prosecuted. We think it is fair to say that the record corroborates defendant's testimony that complainant never attempted to assert any claim for half the amount now claimed to have been lost in the trading enterprise mentioned.

In the year 1934 defendant filed a voluntary petition in bankruptcy and obtained a discharge in the fall of that year. Defendant says he explained the tobacco transaction to his attorney and was advised to list as an obligation the sum of $1,200 claimed by complainant.

As to the nature of the transactions engaged in by the parties as contemplated by their contract, the Chancellor found: ''That the purpose of this trading was purely a gambling transaction on the part of complainant and defendant. They bought and sold large quantities of grains from time to time, sometimes buying ten or more thousand bushels of wheat or other grains one day and would turn around and sell the same quantity on the same day. During the time the account was in existence, they bought and sold seven hundred and fifty thousand to a million bushels of grain of various kinds. They always settled on the rise and fall of the market and were speculating, or gambling, in buying and selling the grain without any intention or purpose on their part, at any time, to take

delivery of the grains bought. No grain was ever delivered to them, and it was never their intention to accept delivery at any time.''

■ Without undertaking to analyze the testimony in detail, we think the whole record shows clearly that there was never any intention to accept delivery of any of the grain so purchased. Neither of the parties had any use for such quantities of grain and all of it was purchased on a margin of from 5 to 10 cents per bushel. Complainant attempts to say that he purchased the grain with the intention of taking it if he should so desire but the clear purpose of the agreement between complainant and defendant was to speculate and, if possible, make money upon the rise and fall of commodity prices upon the market. We, therefore, concur in the Chancellor's conclusions based upon findings supported by the weight of the evidence.

''Any sale, contract, or agreement for the sale of bonds, stocks, grain, cotton, or other produce, property, commodity, article, or thing, for future delivery, where either of the contracting parties, buyer or seller, is dealing simply for the margin, or on the prospective rise or fall in the price of the article or thing sold, and where either of the said contracting parties has no intention or purpose of making actual delivery or receiving the property or thing in specie, shall be deemed and declared gaming.'' Code, Sec. 7819. Acts 1883, Ch. 251, sec. 1.

■ This statute makes dealing in futures gaming or gambling when it is the intention of either the buyer or seller not to make or receive actual delivery. McGrew v. City Produce, etc., 85 Tenn., 572, 4 S. W., 38, 4 Am. St. Rep., 771; Allen v. Dunham, 92 Tenn., 257, 21 S. W., 898.

This rule remained unchanged after the passage of the Act of 1909 as amended by the Act of 1919, now codified under Code, Section 11305 et seq. For, said the court in Shepard & Gluck v. Thomas, 147 Tenn., 338, 347, 246 S. W., 836, 838: ''It is only when the parties dealing in the futures have no intention of making or accepting delivery of the particular commodity that the transaction is unlawful. Of course, the circumstances and manner of dealing may be looked to in determining the intention of the parties in this regard, but where the fact is established that there was an intention to make and accept delivery of the actual commodity traded in, it is not condemned as a gambling contract.''

The opinion shows that the court had in mind the Act of 1919, amending the Act of 1909, and that, in spite of the provisions of the latter Act, such dealings constitute gaming where there is no intention of making or accepting delivery of the particular commodity purchased for future delivery.

■ In this case the dealings involved long and short selling on the market without regard to whether or not the commodity pur-

chased was needed and with no intention that it should be delivered and, in making sales, without regard to whether or not the commodity was on hand for delivery. We think such transactions fall within the prohibition of the statutory law of Tennessee and that a contract of partnership to engage in such dealings is illegal and void.

But it is insisted by complainant that even if the contract be held illegal as a gaming contract, complainant is, nevertheless, entitled to recover half of the losses sustained. Cases from other states are cited as supporting this contention. This is no longer an open question in Tennessee.

In Whitley v. White, Tenn. Sup., 140 S. W. (2d), 157, it was held that the courts of this State will not lend their assistance in any way toward carrying out the terms of an illegal contract, and will not enforce any alleged right directly springing from such a contract. It was there held that wherever the party seeking to recover is obligated to make out his case by showing an illegal agreement or transaction or when it appears that such party was in privity to the original illegal agreement, he is not entitled to recover any money due him under the agreement.

In this case complainant's alleged right of action is predicated upon an illegal contract. Such rights as he asserts spring directly from the alleged contract and, under the authority cited, he cannot maintain an action thereon.

In this view of the case, it becomes necessary to affirm the decree of the Chancellor dismissing complainant's bill.

. Portrum and Ailor, JJ., concur.