MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED, Appellee,

v.

Tom M. SCHRIVER, Appellant.

Court of Appeals of Tennessee, Western Section.

May 27, 1976.

Certiorari Denied by Supreme Court Oct. 4, 1976.

Frank B. Bird, Bird, Navratil & Bird, Maryville, for appellant.

Robert R. Campbell, Hodges, Doughty & Carson, Knoxville, for appellee.

MATHERNE, Judge.

The issue at bar is whether, under Tennessee law, a futures contract made through the Chicago Mercantile Exchange constitutes an illegal gaming transaction.

### I.

The defendant Schriver, through the plaintiff Merrill Lynch, Pierce, Fenner & Smith, Incorporated, entered into certain sell order agreements for 42 carloads (contracts of 36,000 pounds each) of February, 1975 pork bellies, which transactions began on September 23, 1974 and were concluded September 26, 1974. As a result of these contracts and the action of the market in the commodity, the defendant allegedly lost $40,620. The defendant executed a promissory note in favor of the plaintiff in the face amount of $28,572 as settlement of the amount due under these transactions. The note became in default, and the plaintiff sues to collect the balance due of $23,572, plus interest. The defendant, by answer, claims that the note is void because it constitutes payment for a gaming transaction as contemplated by T.C.A. § 39–2020.[1]

---

1. Future contracts without contemplating actual delivery declared gaming contracts.—Any sale, contract, or agreement for the sale of bonds, stocks, grain, cotton, or other produce, property, commodity, article, or thing, for future delivery, where either of the contracting parties, buyer or seller, is dealing simply for the margin, or on the prospective rise or fall in the price of the article or thing sold, and where either of the said contracting parties has no intention or purpose of making actual delivery or receiving the property or thing in specie,

The defendant filed a counter-claim to recover the $40,620 he allegedly lost in the transactions. The plaintiff answered the counter-claim, alleging that the transactions did not violate T.C.A. § 39–2020, and that the transactions are legal and enforceable pursuant to the provisions of T.C.A. § 39–2028.

The plaintiff filed a motion for summary judgment and attached thereto the affidavit of the manager of the plaintiff's Knoxville, Tennessee office. This affidavit was to the effect that the transactions for the defendant were executed on the Chicago Mercantile Exchange, a legitimate produce and commodity exchange; that the transactions were accomplished in full conformity with the rules, regulations, customs and usages of that exchange and the regulations of the Secretary of Agriculture; that the transactions for the defendant were handled in accordance with a Commodity Account Agreement which defendant had entered into with the plaintiff (copy attached); that the transactions were evidenced by confirmation documents (representative copy attached); and, that the plaintiff, at the time of the execution of the transactions, contemplated delivery as and when delivery became due.

The defendant filed his counter-affidavit to the effect that he began buying and selling commodities for future delivery in 1973. At no time did he accept or deliver *in specie;* he was never asked by the plaintiff if he intended to deliver or accept the commodity *in specie;* at the time he placed the order to sell the frozen pork bellies, he did not intend to deliver the same *in specie*, and he is of the opinion that the representative of the plaintiff with whom he dealt did not expect or intend that the commodity be delivered *in specie;* that at all times it was his intention to deal simply for the margin or the prospective fall in the price of pork bellies and to buy and offset as soon as a satisfactory decrease in price was realized, or, alternatively, in the event of a rise in

price, to sell as soon as possible to minimize the loss; that it is his understanding, which he proposes to prove at the trial, that at any given time there are approximately 10 times more pork bellies contracted for than are in existence; and, that the Chicago Mercantile Exchange does not unconditionally require both the buyer to accept and the seller to make actual delivery on all transactions entered into upon that exchange, as is required by law to constitute a "legitimate exchange" under T.C.A. § 39–2028.

By supplementary affidavit, the defendant alleges, and attaches supporting exhibits, that the offsetting which takes place on the Chicago Mercantile Exchange is far more than a mere substitution of parties as allowed by T.C.A. § 39–2028. The defendant claims that during the month of March 1973, the number of open commitments was for 2,693 carloads of pork bellies, and these commitments were, during that month, reduced to zero; but, of those commitments, only 409 were discharged by actual delivery. The defendant argues that these figures reflect the procedure by which offset is practiced on that exchange so as to effect a "wash-out" of about 80% or more of the contracts, thus enabling the gambling sellers and the gambling buyers to settle their wagers.

The trial judge sustained the motion for summary judgment and entered a judgment in favor of the plaintiff for $23,572, plus interest at 10%. The defendant appeals from that decision.

The parties agree that the issues presented in this lawsuit are identical to those considered by Judge Robert L. Taylor, United States District Court for the Eastern District of Tennessee, Northern Division, in the lawsuits of *Paine, Webber, Jackson & Curtis v. Lambert* and *Merrill Lynch, Pierce, Fenner & Smith v. Lambert*, 389 F.Supp. 417, opinion filed on January 27, 1975.[2]

shall be deemed and declared gaming. [Acts 1883, ch. 251, § 1; Shan., § 3166; Code 1932, § 7819.]

2. On appeal, the United States Court of Appeals for the Sixth Circuit filed the following order on October 6, 1975:

The trial judge adopted the reasoning and result reached in *Lambert* as the law of this state relative to the issue at bar.

## II.

We first agree with Judge Taylor that the application of Chapter 251, Public Acts 1883 must be kept distinct and separate from Chapter 94, Public Acts 1919.

The 1883 Act, codified as T.C.A. § 39–2020, heretofore copied, declares as gaming any contract for future delivery where *either of the parties,* buyer or seller, is dealing simply for a margin, or on the prospective rise or fall in the price of the thing sold, and *where either of the contracting parties* has no intention or purpose of making actual delivery or receiving the property or thing *in specie.*

According to this record, the defendant was dealing simply for a margin, and he had no intent to make actual delivery of the pork bellies he contracted to sell. Under Section 39–2020 the contract was a gaming transaction, and the loss suffered by the plaintiff would be unenforceable as against the defendant.

The plaintiff, however, counters with the argument that the transactions are legal under the provisions of Chapter 94, Public Acts 1919, codified as T.C.A. §§ 39–2023 through 39–2029. The statute defines a "bucket shop" and declares that transactions which fall within that definition are illegal and unlawful. The definition of a "bucket shop" as set out in the 1919 Act is codified at T.C.A. § 39–2023, as follows:

[That] a bucket shop within the meaning of [This Act] is defined to be an office, store or other place wherein the proprietor or keeper thereof, or other person or agent either in his or its behalf, or as an agent or correspondent of any other person, [corporation, association, or copartnership] within or without the state, conducts the business of making or offering to make contracts, agreements, trades or transactions respecting the purchase or sale or purchase and sale of any stocks, grains, provisions or other commodity or personal property wherein both parties thereto, or said proprietor or keeper contemplated or intended that the contracts, agreements, trades or transactions shall be or may be closed, adjusted, or settled according to or on the basis of the market quotations or price made on any board of trade or exchange upon which the commodities or securities referred to in such contracts, agreements, trades or transactions are dealt in and without a bona fide transaction on such board of trade or exchange, and the maintenance of any such office, store or other place of business, and the making of such contracts or agreements shall be and the same are declared illegal and unlawful.

■ We agree with Judge Taylor that Section 39–2023 sets up a two-fold test to determine the illegality of a particular transaction, namely, that the parties to the contract intended simply to settle on the margin *and* to do so without effecting a bona fide buy and sell transaction on a board of trade or exchange. It requires the presence of both elements to render the transaction illegal as a bucket shop transaction. The intent of the parties to make or receive delivery is immaterial under T.C.A. § 39–2023.

We hold that the two-fold test of illegality as set forth in Section 39–2023 is not present under the facts of the lawsuit at bar because the parties admit that there was a bona fide transaction on a board of trade. The defendant complains that the board of trade does not constitute a "legitimate exchange or board of trade" as required by T.C.A. § 39–2028; however, there is no denial that the transactions were made on the Chicago Mercantile Exchange and that the loss suffered by the plaintiff resulted from those transactions made by the plaintiff on behalf of the defendant.

The appeal from the district court's grant of summary judgment for plaintiffs having come on to be heard, and the court having considered the briefs and record on appeal and the argument of counsel, upon consideration, it is ORDERED that the judgment be, and it hereby is AFFIRMED for the reasons set forth in the opinion of the district court.

Where the indicia of illegality as set out in Section 39–2023 are not established and where, as here, the contract was made on a board of trade, another part of the 1919 Act, codified as T.C.A. § 39–2028, becomes controlling. That section provides that contracts to buy and sell for immediate or future delivery any property or commodity as set out in Sections 39–2023 through 39–2029, where the orders to buy or sell were made on and in accordance with the rules of a legitimate board of trade, are lawful:

. . . where the rules or regulations thereof (board of trade) forbid the practice or mode of trading hereinbefore declared to be unlawful (bucket shops as covered by Section 39–2023 through 39–2027), and where said rules or regulations require both the buyer to accept and the seller to make delivery upon all transactions entered into upon said exchange, or board of trade, . . . and provided further, that no such contract for the purchase or sale as aforesaid, . . . shall be deemed unlawful as lacking the essential elements of actual delivery thereon, for the reason that said contract has been subsequently offset or settled between the members of such exchange or board of trade with or through whom any such contract or contracts were made or executed, where the only effect of said offset or settlement has been to substitute other parties, either as buyers or sellers, for those with or through whom the transaction was originally made . . . (Parentheses added)

■ It is thus apparent that the transaction in question is lawful under T.C.A. § 39–2028: (1) if the rules and regulations of the Chicago Mercantile Exchange forbid the practice or mode of trading declared to be unlawful under Section 39–2023, (2) if those same rules and regulations require both the buyer to accept and the seller to make delivery upon all transactions not settled by offset or settled between the members of the exchange, and (3) if any offset or settlement has the effect of merely substituting other parties for those with whom the transaction were originally made.

The defendant's argument that there was no intention on his part, nor on the part of the plaintiff's representative with whom he dealt, to make and receive actual delivery of the pork bellies is without merit. T.C.A. § 39–2023 makes no reference to delivery or the intent to deliver; T.C.A. § 39–2028 does not require actual delivery. We hold that the delivery contemplated by T.C.A. § 39–2028 may be accomplished by offset. In *Palmer v. Love* (1934) 18 Tenn.App. 579, 80 S.W.2d 100, this Court, in considering the 1919 Act, held as follows:

A "set-off" is a method by which a contract to purchase is set off against a contract to sell without the formality of an exchange of warehouse receipts or other actual delivery and, *in legal effect, is a delivery.* (Emphasis added)

■ We agree with Judge Taylor that the rules and regulations of the Chicago Mercantile Exchange meet the requirements of T.C.A. § 39–2028, and it is, therefore, a legitimate exchange as contemplated by statute. See Chapters 7, 9 and 11, Rules of the Chicago Mercantile Exchange. [Filed and authenticated by the trial judge as being before him on consideration of the motion for summary judgment; Rule 14(8), Supreme Court of Tennessee.]

We also note the expressed purpose for the enactment of T.C.A. § 39–2028. That section provides in part as follows:

The plain intent of this section is while declaring unlawful all the transactions conducted in and through a bucket shop as described and defined in §§ 39–2023—39–2029 *to make lawful and enforceable and to withdraw from the provisions of the gaming and wagering laws, all transactions executed upon and in accordance with the rules and regulations of a legitimate produce, stock, or cotton exchange or board of trade,* and §§ 39–2023—39–2029 shall be liberally construed at all times so as to effectuate this object. (Emphasis added)

It is thus apparent that T.C.A. § 39–2020, a gaming statute, is not applicable to a factual situation which falls within the provisions of T.C.A. § 39–2028. It is this fail-

ure to recognize the different purposes of the two statutes which has apparently caused the defendant to misinterpret the opinion of this Court in *Easterly v. Myers* (1940) 24 Tenn.App. 688, 148 S.W.2d 640.

In *Easterly,* the plaintiff was a farmer and livestock dealer, and the defendant was a speculator in stocks and commodities. The parties entered into an agreement to engage in the buying and selling of grain through futures contracts to be executed through a broker in Knoxville, Tennessee. The plaintiff advanced $14,000 cash for the purpose of carrying out the agreement between the parties. The defendant advanced no money for the endeavor, except one-half of a $1,000 loan which the parties had made for the purposes of the undertaking. The venture rather promptly failed, and the plaintiff sued the defendant for one-half the amount which the plaintiff had advanced for the purpose of the common enterprise. This Court, speaking through Judge McAmis, found that the parties in their agreement never anticipated that delivery would be made of the various commodities bought or sold, and that they entered into their agreement with the express intention of gambling on the futures market. The court held *the agreement between the parties* to be a gaming contract under T.C.A. § 39–2020 and dismissed the plaintiff's lawsuit. There was no question made nor claim asserted based upon any transaction on an exchange or board of trade. In *Easterly,* the contract between the parties, upon which the plaintiff sued, was not subject to, nor tested by, any provision of the 1919 Act; *Easterly* does not conflict with the 1919 Act nor any decision interpreting that statute. The decision in *Easterly* was, and it so remains to this day, a proper application of T.C.A. § 39–2020.

Section 39–2020 remains a gaming statute of Tennessee, and the "intent to make actual delivery test" is applicable to all transactions which fall within the provisions of that statute. An expressed intent of the 1919 Act is . . . "to withdraw from the provisions of the gaming and wagering laws, all transactions executed upon

and in accordance with the rules of a legitimate . . . board of trade . . . ." If the transaction in question complies with T.C.A. § 2028, it is declared to be legal and enforceable even though it might offend the statute relied upon by the defendant, namely, T.C.A. § 39–2020, a gaming statute.

## III.

The courts of Tennessee have consistently held that transactions within the purview of T.C.A. § 39–2028 are enforceable. *Shepard & Gluck v. Thomas* (1922) 147 Tenn. 338, 246 S.W. 836; *Palmer v. Love, supra; Cloud Cotton Company v. White* (1961) 51 Tenn.App. 212, 366 S.W.2d 144.

■ And, the burden of proving a transaction to be gaming rests upon the party who makes that assertion. *Palmer v. Love, supra; Cloud Cotton Company v. White, supra.*

The defendant's only assignment of error in this Court is as follows:

·The trial judge erred in entering judgment against Schriver without a hearing to resolve the genuine issues as to material facts raised by the affidavits—namely, the *bona fide* intentions of Merrill Lynch and Schriver as to actual delivery *in specie* and the *bona fide* requirements of the Chicago Mercantile Exchange as to actual delivery on *all* transactions made on said Exchange.

■ As hereinbefore pointed out, the transaction, upon which the plaintiff sues, falls within the provision of T.C.A. § 39–2028, and this statute does not require an intent of actual delivery nor delivery *in specie* in order for a contract to be enforceable; the delivery contemplated by T.C.A. § 39–2028 may be actual delivery or delivery of offset; and, the rules and regulations of the Chicago Mercantile Exchange meet the requirements of T.C.A. § 39–2028.

There is no dispute as to any material fact, and the plaintiff is entitled to judgment as a matter of law. The defendant's assignment of error is accordingly overruled; and, on the grounds as herein stated, the judgment of the trial court is affirmed.

The cost of this appeal is adjudged against the defendant-appellant for which execution may issue. This cause is remanded to the trial court for the enforcement of its judgment.

CARNEY, P. J., and NEARN, J., concur.