IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON

FILED

Dec. 30, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

**MILTON SCHACTER,**

    Complainant-Appellant,

Vs.                            C.A. No. 02A01-9603-CH-00060
                                    Shelby Chancery No. 103900-3

**FRIENDLY CHEVROLET
CADILLAC TOYOTA, INC., et al,**

    Defendant-Appellee.

FROM THE SHELBY COUNTY CHANCERY COURT
THE HONORABLE D. J. ALISSANDRATOS, CHANCELLOR

Ira M. Thomas of Memphis
For Appellant

Fred M. Ridolphi, Jr., of Memphis
For Appellee

*REVERSED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**

**CONCUR:**

**DAVID R. FARMER, JUDGE**

**HEWITT P. TOMLIN, JR., SENIOR JUDGE**

This is a breach of contract case. The plaintiff, Milton Schachter, appeals from the order

of the Shelby County Chancery Court dismissing his complaint against the defendants, Hugh

Chalmers, Sr., Hugh Chalmers, Jr., and Hugh Chalmers Chevrolet-Cadillac-Toyota, Inc.[1]

In September 1993, Schachter began shopping for a new car and decided to purchase a Chevrolet Suburban. He couldn't find exactly what he wanted so he decided to custom order a Suburban from the GM factory. Schachter contacted the Gwatney Chevrolet dealership in Memphis and configured an ideal vehicle. Gwatney printed a four-page computer printout listing the features and the options and quoting a price of $27,651.00. Schachter wanted a better price and left with the Gwatney computer printout of his ideal Suburban.

On October 28, 1993, Schachter approached Friendly, with whom he had met before, and discussed the computer printout with Arthur Dolittle, a Friendly salesman, and Rick Helper, the sales manager. Friendly is located in West Memphis, Arkansas. Friendly initially proposed to beat the Gwatney price by $100.00. Schachter eliminated some of the options from his ideal car and agreed upon a trade-in credit for his minivan. After subtracting the options and the trade-in credit, Schachter and Friendly agreed upon a custom-order price of $22,934.00. Schachter also agreed to pay any increase in the GM factory price to Friendly. The costs of options to be subtracted, the amount of the trade-in, and the resulting price were written in red ink on the Gwatney computer printout. Schachter, Helper, and Dolittle all signed the agreement by signing the Gwatney computer printout. Schachter testified that he asked for a contractual piece of paper but was told that the signed printout would suffice.[2] Helper was authorized to bind Friendly to a contract but Dolittle did not have that authority. Dolittle testified that he signed the computer printout as a witness to the deal between Helper and Schachter.

Friendly required a deposit for the custom-order Suburban and requested $1,000.00. The parties agreed upon a $400.00 deposit which Schachter paid by check with "deposit on four-wheel drive Suburban total price of $22,934 net of trade" in the memo space at the bottom of the check. Friendly ordered the Suburban for Schachter.

While waiting for the order, Schachter called Dolittle at Friendly and was able to change the color of the interior of the Suburban. In addition, Schachter called Dolittle multiple times

---

[1] The Chalmers are the owners of the car dealership in question. The dealership does business as Friendly Chevrolet. In this opinion, the defendants will be referred to as Friendly.

[2] Friendly used a standard contract form for most customers. However, these customers generally purchased cars and trucks that were part of Friendly's inventory.

to check on the progress of production. On January 27 or 28, 1994, after waiting three months, Schachter received a call from Dolittle notifying him that the car had arrived. Shortly thereafter, on January 28, 1994, Schachter received another call from Friendly stating that they couldn't sell him the Suburban at that price. Dolittle testified that Hugh Chalmers, Jr. told him he couldn't sell the Suburban at the agreed upon price because Friendly would make more money selling the Suburban wholesale to another dealer. Friendly claimed that they could not find any records of the computer printout or the deposit. However, Dolittle had a copy of the agreement, which Friendly confiscated from him. Later in the day, Dolittle called Schachter from a pay phone away from the Friendly premises and stated that he knew they had a deal and that Friendly wasn't going along with it. When Schachter called Friendly to ask for Helper, he was told that Helper was no longer employed by Friendly. On January 31, 1994, Schachter faxed Friendly a copy of the canceled deposit check.

On the same day that he learned Friendly wouldn't honor the agreement, January 28, 1994, Schachter contacted an attorney. On February 1, 1994, Schachter's attorney faxed Friendly a letter asking if they were going to honor the agreement. When Friendly did not respond, Schachter's attorney faxed them a letter dated February 4, 1994 demanding a return of Schachter's deposit and informing them that a lawsuit would be filed.

Hugh Chalmers, Jr. testified that he had no knowledge of the deal made by Helper with Schachter. He called Helper, who no longer was employed by Friendly, to help him understand the terms written in red ink on the computer printout. Helper remembered agreeing to the initial price, but did not remember the subtracted options or the trade-in allowance. Chalmers claims that, after he received a copy of the canceled check from the bank, he understood the bottom line price, and then he called Schachter to work out their problems. He claims that he called on February 7, 1994, and that Ms. Schachter, the plaintiff's wife, told him they had already purchased a replacement. Schachter decided to purchase another Suburban but was unable to locate a similar new Suburban. On February 5, 1994, he purchased a used 1994 Suburban with 9,867 miles already on the odometer and paid $25,607.54 for the car.[3]

Schachter demanded his deposit back with interest and filed suit on February 18, 1994.

---

[3] Schachter received a $5,995.00 trade-in allowance for his minivan for the second Suburban that had a list price of $31,602.54. The resulting purchase price was $25,607.54.

In the Complaint, Schachter alleged that Friendly breached the agreement to sell him a custom-order Suburban. He alleged that Friendly fraudulently obtained his deposit under the false pretense of selling him the Suburban and in an effort to coerce him to purchase the Suburban at a greater price. He also alleged that Friendly violated the Tennessee Consumer Protection Act, T.C.A. § 47-18-101 *et seq.*, willfully or knowingly by causing confusion or misunderstanding as related to the authority of Dolittle and Helper. Finally, Schachter alleged that Friendly appropriated and converted his deposit for their own use and benefit. In their Answer, Friendly raised various defenses and denied all of the allegations.

The case was heard before the Chancery Court of Shelby County, sitting without a jury, on July 13, 1995. At the close of Schachter's proof, Friendly moved to dismiss the case pursuant to T.R.C.P. 41.02 (2). The chancellor found that Schachter did not carry his burden of proof as to the allegations of fraud and conversion.[4] The chancellor also found that the Tennessee Consumer Protection Act did not apply to the facts of the case and no relief was available under the Act. Finally, the chancellor specifically found that Schachter made out a prima facie case of breach of contract, but that he failed to prove that the breach of the agreement resulted in any compensatory damages. In an order dated August 4, 1995, the chancellor dismissed the complaint.[5]

Schachter appeals from the chancellor's order dismissing the complaint and presents the issues as follows: 1) Did the trial court err in finding that although the defendants breached the contract with the plaintiff to sell him a vehicle, the plaintiff nonetheless suffered "no damages" under the law, and 2) Did the trial court err in finding that the Tennessee Consumer Protection Act did not apply to the subject transaction because it lacked sufficient "contacts" with the State of Tennessee and therefore, under conflict of laws, the law of Arkansas applied. Friendly presents an additional issue: Did the trial court err in finding that the Appellee breached its contract with Appellant to sell him a vehicle. The real issue before this Court is whether the chancellor properly granted Friendly's motion to dismiss pursuant to T.R.C.P. 41.02(2).

If a motion to dismiss is made at the close of the plaintiff's proof in a non-jury case,

---

[4] Schachter has not appealed the chancellor's ruling on the allegations of fraud and conversion.

[5] The order of dismissal does not specify the particular named defendants that are contracting parties and no issue is presented in this regard.

under T.R.C.P. 41.02(2), the trial court must impartially weigh and evaluate the evidence just as though it were making findings of fact and conclusions of law after presentation of all the evidence. If the plaintiff's case has not been established by a preponderance of the evidence, the case should be dismissed if, on the facts found in the applicable law, the plaintiff has shown no right to relief. *City of Columbia v. C.F.W. Constr. Co.*, 557 S.W.2d 734 (Tenn. 1977); *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 552 (Tenn. App. 1991).

Our scope of review is pursuant to T.R.A.P. 13(d). The findings of the trial court in granting a T.R.C.P. 41.02(2) motion are accompanied by a presumption of correctness and, unless the preponderance of the evidence is otherwise, those findings must be affirmed. *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 552 (Tenn. App. 1991).

In the case *sub judice*, the transaction for the custom-order Suburban was completed in its entirety in Arkansas. The agreement was negotiated and signed in Arkansas, and the Suburban was delivered to Arkansas. In their brief, Friendly argues that the law of Arkansas controls. However, Friendly did not prove or show the laws of Arkansas that control the outcome of this dispute. In the absence of a showing to the contrary, we presume that Arkansas law is the same as that of Tennessee.[6] *Shepard & Gluck v. Thomas*, 147 Tenn. 338, 347, 246 S.W. 836 (1922); *John J. Heirigs Constr. Co. v. Exide*, 709 S.W.2d 604, 609 (Tenn. App. 1986).

Although not argued by either party, we believe that the transaction in question is a sale of goods that is governed by Chapter 2 of the Uniform Commercial Code, T.C.A. §47-2-101 (1996) *et seq.* An agreement for the delivery of an automobile falls under the provisions of Chapter 2 of the Tennessee UCC:

> (1) "Goods" means all things (including specially manufactured goods) which are moveable at the time of identification to the contract for sale other than the money in which the price is to be paid . . . .
> (2) Goods must be both existing and identified before any interest in them can pass. Goods which are not both existing and identified are "future goods." A purported present sale of future goods or of any interest therein operates as a contract to sell.

T.C.A. § 47-2-105 (1996). Obviously, automobiles are moveable goods. In this case, we are

---

[6] We note that the Uniform Commercial Code, which will be applied in this case, is the same in both Arkansas and Tennessee.

dealing with a "future" good because the Suburban had not yet been manufactured. However, it is still treated as a contract to sell goods under the UCC, and, therefore, the Friendly transaction will be governed by the Tennessee UCC.

Friendly originally argued that a contract was not formed, and therefore, there could be no breach. The Tennessee UCC provides as follows:

> (1) A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.
> (2) An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined.
> (3) Even though one (1) or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy.

T.C.A. § 47-2-204 (1996). The proof shows that Schachter, Helper, and Dolittle intended to make a contract and agreed by signing the computer printout. An enforceable contract existed that provided for delivery of the custom-made Suburban to Schachter, and Friendly breached this contract when they refused to deliver the Suburban to him.

The chancery court held that Schachter suffered no damages. The Tennessee UCC provides for the measure of damages under the heading "Buyer's damages for nondelivery or repudiation":

> (1) Subject to the provisions of this chapter with respect to proof of market price (§ 47-2-723), the measure of damages for nondelivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this chapter (§ 47-2-715), but less expenses saved in consequence of the seller's breach.
> (2) Market price is to be determined as of the place for tender or, in cases of rejection after arrival or revocation of acceptance, as of the place of arrival.

T.C.A. § 47-2-713 (1996). The proof showed that Friendly did not want to deliver the Suburban to Schachter because they could receive more money by selling it wholesale to another dealer. There was obviously a difference between the market price when Schachter learned of the breach and the contract price for which Schachter had negotiated. Therefore, we must respectfully disagree with the chancellor that Schachter did not sustain any damages. We must remand this case back to the chancery court to hear Friendly's proof.

Schachter also argues that the chancery court erred in its ruling that the Tennessee

Consumer Protection Act (TCPA), T.C.A. § 47-18-101 (1995) *et seq.*, did not apply. The TCPA was enacted to "protect consumers . . . from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce in part or wholly within this state." T.C.A. § 47-18-102 (1995). The transaction in question took place wholly within Arkansas. In addition, the chancellor found that there was no fraud or deception, a ruling that Schachter has not appealed. The chancery court was correct in holding that the TCPA is not applicable to these facts.

Accordingly, the order dismissing plaintiff's complaint is reversed, and the case is remanded to the trial court for defendants' proof and such other proceedings as may be necessary. The costs of this appeal are assessed one-half against appellant and one-half against appellee.

 

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**DAVID R. FARMER, JUDGE**

_____
**HEWITT P. TOMLIN, JR.**
**SENIOR JUDGE**